J-S28029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
CARLOS BURGOS  :
:
Appellant  :  No. 280 MDA 2022

Appeal from the Judgment of Sentence Entered January 13, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002378-2021

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED NOVEMBER 30, 2022**

Carlos Burgos appeals from the judgment of sentence imposed following his guilty pleas to ten charges: aggravated assault by vehicle while driving under the influence ("aggravated assault while DUI"), DUI – controlled substance, DUI – combination alcohol/drug, terroristic threats, obstruction of justice, DUI – general impairment, DUI – high rate of alcohol, reckless driving, disregarding a traffic lane, and failure to notify change in address.[1] Burgos argues his sentence was excessive and the court did not properly consider the relevant sentencing criteria. We affirm.

At the guilty plea hearing, the Commonwealth presented the following factual basis for the charges:

---

[1] Respectively, 75 Pa.C.S.A. §§ 3735.1(a), 3802(d)(1)(ii), and 3802(d)(3); 18 Pa.C.S.A. §§ 2706(a)(1) and 5101; and 75 Pa.C.S.A. §§ 3802(a)(1), 3802(b), 3736(a), 3309(1), and 1515(a).

[O]n April 1 of 2021 [Burgos] was driving around 10:30 p.m. on Eisenhower Boulevard in Lower Swatara Township. Officers in Lower Swatara Township noticed him driving erratically[,] swerving off the road into the shoulder and across the lane. A seventeen year old female, Taryn Miller, was walking on Eisenhower Boulevard[,] across the road[,] on the shoulder[,] when [Burgos] hit her and he failed to stop. Video from the area shows that he never hit his brakes when he hit her. She flew up into the air . . . and hit the ground.

When [Burgos] eventually stopped for the police officers, field sobriety tests were done and there were indications of impairment. [Burgos] admitted that he had been at Angie's Bar drinking prior to driving. He was read the DL 26B and refused a blood draw. A search warrant was done for his blood and when the officers came back to the booking center with the search warrant to withdraw his blood, he was physically violent. It took four officers to restrain him into the chair for the blood draw.

During the restraint he spit twice on the corrections officer at Dauphin County Prison. He had to be put in a spit mask. Once he was in the restraint chair and during the blood draw . . . [Burgos] was flicking his wrist and clenching his fist to impede the ability of the phlebotomist to withdraw his blood to test it for this case.

After blood was drawn there was approximately a tube and a quarter which was enough to test. He did threaten to kill Officer Lesko who had arrested him in this case. Blood was sent to NMS Lab which is an approved laboratory and he was a .114 BAC and was positive for cocaine and cocaine metabolites, Your Honor.

Taryn Miller who was hit nearly died. She was in a medically induced coma for an extended period of time. She is now 18 years old. She is paralyzed. She is incontinent. She has a brain injury that affects her processing and speech. She is actually still currently hospitalized in Hershey Medical center as she has no caretakers and is awaiting placement in a nursing facility.

N.T., 11/23/21, at 3-4.

At sentencing, the court noted it had reviewed a Pre-Sentence Investigation report ("PSI") and admitted it into evidence. N.T., 1/13/22, at 6. According to the PSI, Burgos "stated he does not have a problem with

- 2 -

alcohol and does not drink often." PSI, 1/13/22, at 6. It also stated the following:

> [Burgos] reported he started regularly drinking alcohol when he was in his late 40's. He stated he would drink alcohol on the weekends or on special occasions. [Burgos] reported the last time he consumed alcohol was the day he was arrested for the current offenses. He stated on that day, he had a beer and a shot. [Burgos] denied having illegal drug use at any time in his life.

*Id.*

Regarding Burgos's prior record, the PSI listed a discharged simple assault charge from 1999; vehicle offenses to which Burgos pleaded guilty in New York in 1990, including operating motor vehicle while impaired by drugs; and convictions for driving while intoxicated, operating a motor vehicle with .08% alcohol or more in blood, and driving while ability impaired by the consumption of alcohol, to which Burgos pleaded guilty in New York in 2017. The PSI contained a copy of the affidavit of probable cause attached to the criminal complaint.

The PSI also included a calculation of the applicable sentencing guidelines ranges for the case.[2] For aggravated assault while DUI, the standard range of minimum sentences was 18 to 30 months' incarceration, and the aggravated range was a minimum of 31 to 42 months' incarceration.

---

[2] The PSI reflected that Burgos had a prior record score of 1, and that the offense gravity scores for aggravated assault by DUI, terroristic threats, and obstructing justice were 9, 3, and 3, respectively. It also showed the statutory maximums were ten years, five years, and two years of incarceration, for the aggravated assault while DUI, terroristic threats, and obstruction charges, respectively.

For terroristic threats and obstruction of justice, the standard range was restorative sanctions of up to 1 year of probation to a minimum of six months' incarceration. The PSI showed the aggravated range extended to a minimum of nine months' incarceration for both charges.

The court stated that it had reviewed the affidavit of probable cause. It also confirmed that the percentage of alcohol that had been in Burgos's bloodstream at the time of the blood draw was .114, and the amount of cocaine and metabolites was 100 nanograms. N.T., 1/13/22, at 9-10.

The victim made the following statement to the court:

I couldn't talk at first. I had to learn how to talk. I used to mouth words at people to understand me in the beginning and now I say things I shouldn't say. I couldn't even breathe on my own. I had to learn again how to walk. At first I couldn't even wipe my own ass. I had to learn everything again like I was a baby. I end up drooling a lot and I can't help it. I had to learn how to eat. And even to this day I still don't drink like I'm supposed to. I can't eat any types of meals without needing a sip of water and that is unusual. This physical therapist tried to help me drink more fluids, and I said I feel like I don't have to and she actually made me, because I had to even though I felt like I didn't.

I have several teeth missing. When he hit me they were all dangling from my mouth. At the hospital I noticed one was hurting extremely bad, and apparently I had a hole in it so they had to remove it while I was up. And now I'm going to the actual dentist tomorrow and they are going to clean my teeth and take x-rays. I know I need five to six pulled all because he wanted to drink and drive.

Look at what you did to me. You did all of this. He hit me while I was standing waiting for my grandpa. Why don't you have this happen to you, or someone you love and see what they're gonna do.

Question for you: Will you ever drive drunk again and hit someone else?

- 4 -

[BURGOS]: No, ma'am.

THE VICTIM: Or did you just come back because you know you would have gotten in more trouble. Mostly you would not come back at all if you had known you had killed me. I don't remember what happened. I don't remember that day. I used to skateboard by myself and now I'm learning how to with assistance. I won't ever, ever stop, even if I get hit again and I'm still alive. Look at me now, I'm still learning everything, going to therapy, learning to walk and getting better.

So in closing, I would like to say that I hope that they throw the book at you. And this is something that my social worker said not to fully say but I have to say a little bit. You messed up my entire life and eff you.

*Id.* at 4-5.

Defense counsel argued that Burgos felt great shame and remorse for the accident and had been pursuing "some groups and some other things to help him learn some skills emotionally that w[ere] unavailable because of COVID 19. He did try to do Men Establishing New Directions as well." *Id.* at 7-8. Defense counsel argued Burgos has an insignificant criminal record, with no violent crime. *Id.* at 8. Burgos has one son and a fiancé.j-s28029- *Id.* at 7-8. Defense counsel argued Burgos lined up work at his trade of auto-mechanic upon his release, so he would be able to pay restitution. *Id.* at 8. Counsel also requested the court make Burgos eligible for work release so that he could pay the victim. *Id.* Defense counsel argued, "There wasn't really anything that significant in the PSI other than he works hard." *Id.* at 9.

Burgos addressed the court and apologized to the victim, stating that he had not meant to hurt anyone and "[t]his is an accident that happened." *Id.* at 10. The court then addressed Burgos's failure to accept responsibility

for the accident, his previous DUIs, and his abuse of alcohol in the following exchange:

> THE COURT: Well, first of all, let's stop. Accidents are things that are outside the realm of expectation. When you load yourself up with cocaine and alcohol that's not an accident[,] that's a crash. And in this case, this crash was an aggravated assault by motor vehicle while DUI. So I just don't think accident fits.
>
> [BURGOS]: I don't know how to put it in the right words, sir, but I'm not really a drug user. It was just something that was in my system from three days ago. I don't even remember about that, but it's okay.
>
> THE COURT: Anything else you want to say?
>
> [BURGOS]: No, sir.
>
> THE COURT: You saw the description of your conduct at the hospital and your conduct toward the officers?
>
> [BURGOS]: No. No, sir.
>
> THE COURT: And when there was a valid warrant for the drawing of your blood, belligerent would be an understatement.
>
> [BURGOS]: I don't really remember.
>
> THE COURT: Was that you?
>
> [BURGOS]: No, sir. No.
>
> THE COURT: Well, then who are you going to blame it on?
>
> [BURGOS]: I'm not a violent guy. I don't know, sir, but no.
>
> THE COURT: Well, this is what I want to understand. Are you saying it's because of the drugs and alcohol in your system?
>
> [BURGOS]: Maybe.
>
> THE COURT: Well, because you just got finished saying you just happened to have something left over in your system and you were kind of minimizing your level of impairment.
>
> [BURGOS]: I really don't remember that much, Your Honor. I'm almost 60 years old, I kind of forget stuff.

THE COURT: Where in New York are you originally from?

[BURGOS]: I'm from -- excuse me. I'm from the Bronx.

THE COURT: From the Bronx?

[BURGOS]: Yes.

THE COURT: Your first DUI was in Westchester just north of the Bronx.

[BURGOS]: Westchester.

THE COURT: Westchester Police Department I think.

ATTORNEY MALEK: In the '90s.

[BURGOS]: No. There was no DUI in Westchester.

ATTORNEY MALEK: I think it was in the '90s, [Burgos].

[BURGOS]: I didn't have a DUI in Westchester.

THE COURT: Westchester County --

[BURGOS]: No.

THE COURT: -- New York. That would be north of the Bronx.

[BURGOS]: No. No.

THE COURT: It was.

[BURGOS]: I lived in Bethlehem for 20 years, and that was 35 years ago my first DUI.

THE COURT: Well, this is '90. 1990.

[BURGOS]: I didn't have --

THE COURT: It was a DUI first offense, aggravated unlicensed operation of motor vehicle, whatever that is under New York law. Probably sounds worse than it is, but at that point did you realize you had a problem with drinking and driving?

[BURGOS]: No, sir.

THE COURT: Then you had another one in New York City and that was October 3rd. Didn't you realize you had a problem with alcohol then?

[BURGOS]: What year was that?

THE COURT: October of 2016.

[BURGOS]: That was -- it wasn't alcohol, it was two glasses of wine. I was at my mother's funeral, we had a family dinner. It wasn't even alcohol. I paid a fine on that.

THE COURT: It was a lower level. It was a .08. That's not two glasses of wine.

[BURGOS]: No.

THE COURT: Unless they were really big glasses of wine.

[BURGOS]: No, sir.

THE COURT: I get the impression you're not taking your issues seriously.

[BURGOS]: Yes, I am. Yes, I am.

THE COURT: Are you an alcoholic?

[BURGOS]: I don't think so.

THE COURT: Well, I don't think you're taking it seriously.

[BURGOS]: Yes, sir, I am.

THE COURT: If you were taking it seriously this wouldn't have happened and this poor lady wouldn't be in this situation. One --

[BURGOS]: I understand.

THE COURT: -- where they actually anticipated her not surviving and were prepared to amend the charges to homicide by vehicle.

[BURGOS]: I understand, sir.

THE COURT: And that extraordinary lady overcame those odds and is fighting back. And in many ways it makes this case more heinous than a homicide by vehicle.

[BURGOS]: I understand.

THE COURT: You simply kill somebody, and as bad as it is for the family, in this case we have a survivor and a family that's going through at least as much. And I'm just not seeing that there was

any sense of responsibility on your part when you then minimize that conduct.

[BURGOS]: Yes, sir.

*Id.* at 11-15.

The Commonwealth argued for an aggravated sentence based on the severity of the victim's injuries. *Id.* at 16. The Commonwealth also argued that for normal assault charges, "there are multiple charges in between that would account for the causing of serious bodily injury which would make a regular aggravated assault a higher guideline," but that when the charge is aggravated assault by vehicle while DUI, "[t]his charge and these guidelines encompass everything from a broken television all the way up to [the victim]." *Id.* The Commonwealth also argued that Burgos had left the scene, and only stopped when he saw the police, and that upon exiting his car, he complained that "he had just got his car fixed and now it was dented again." *Id.* The Commonwealth also emphasized that Burgos had fought the police officers and threatened to kill an officer during the blood draw. *Id.* The Commonwealth further argued that at his preliminary hearing, Burgos had protested, "I didn't hit her, she stepped in front of my car." *Id.* at 16.

The court again addressed Burgos regarding his level of remorse:

THE COURT: I'm at a loss to come up with a more disturbing fact situation, sir. And this whole time I've been looking for some glimmer from you that you truly appreciated the magnitude of the harm that you did.

[BURGOS]: I do, Your Honor.

THE COURT: The fact that you couldn't walk in and say yes, I'm an alcoholic, I'm out of control, I need all the help and you're not even sure you are.

[BURGOS]: Yes, sir.

THE COURT: And you're sending me conflicting signals.

[BURGOS]: I'm sorry, sir. Your Honor.

THE COURT: Well, the time for being sorry --you'll have plenty of time to be sorry, but I've got to structure something that takes into consideration a lot of factors, all right.

*Id.* at 17-18. The court then explained its reasoning in imposing sentence:

The guidelines are very important because that's what's set for a standard offense, an aggravated, or mitigating offense. And there's always the option of the Court to go outside of them as well in appropriate cases.

I have to take into consideration your rehabilitative needs, all right. Obviously, the SCI has great programs for treating drugs and alcohol and any other related issues that are found, but there's also a very important consideration which is deterrence.

And here's the problem. The difference between a DUI and a homicide by vehicle DUI, or an aggravated assault DUI doesn't really have much to do with the drunk behind the wheel, it has more to do with the person unlucky enough to be in your zone of influence when you choose to get behind such a piece of equipment without being in control of your faculties to the point then where you don't even appreciate what you did. The fact that you showed total disrespect for the authorities, law enforcement, who asked under Implied Consent for your results, and because this could have been a homicide by vehicle they got a search warrant which was an order signed by a judge to submit to that test. And you didn't even honor the law or the court or law enforcement. And then on top of that, to threaten the lives of law enforcement, obstruct the administration of justice. That's what makes your case abhorrent.

And the fact that I have to see this young lady who for the rest of her life is gonna struggle just to get to some level of normality, I commend her bravery. I am amazed at the miracles of medicine, but she has the right to a level of retribution, combined with the

need for deterrence for others that think that getting behind the wheel doing drugs and alcohol is okay. And then someone that had two priors where the warning light should have gone off and no, it didn't go off. And then the behavior you showed to your fellow man, to law enforcement, and the law is what condemns you to the sentence that I'm about to impose.

And again, I could do a lot of consecutive things to bring them all in, but I'm going to structure this in such a way that you can maximize the treatment opportunities that are available at a state correctional institution.

So this sentence may not be consistent with the standard or even the aggravated range of the sentencing guidelines, but I'm factoring in the terroristic threats, the hindering apprehension, and the fact that aggravated assault DUI doesn't take into consideration two prior DUI's, one outside of ten and another within ten. But I'm going to do it so it's one sentence that will meet your therapeutic and treatment needs, you only have to go through the parole process once as opposed to having to go through consecutive sentences. But that's the reason this sentence is structured in the way that it is.

*Id.* at 17-20.

The court imposed a sentence of four to 10 years' incarceration for aggravated assault while DUI, thus exceeding the recommended aggravated range sentence by six months. The court also directed that "a comprehensive drug and alcohol evaluation as well as a psychological evaluation be performed" "to address all of the issues so that this will be his last encounter with the criminal justice system." *Id.* at 20; Sentencing Order, 1/13/22, at 1. For terroristic threats, the court stated it would "structure this in a way that there is the ability to monitor[.]" N.T., 1/13/22, at 21. It sentenced Burgos to five years' probation, consecutive to the term of incarceration. The court imposed an additional two years' probation for obstruction of justice, also to be served consecutively to the sentence of incarceration but concurrently with

the other probationary term. The other four DUI offenses merged for purposes of sentencing, and the court imposed no further penalty on the remaining Motor Vehicle Code violations.

After imposing sentence, the court stated, "All right. You have some time to really do some penance. You're going to have an opportunity to reevaluate the kind of help you need. And I hope that you take advantage of the opportunities to straighten yourself out before you're released to the public again." *Id.* at 23.

Burgos filed a post-sentence motion, arguing that the court had imposed a sentence in the aggravated range, and requesting that the court impose a standard-range sentence. Burgos argued a modification was warranted because he "had a minimal prior record, secured potential future employment, . . . completed a drug and alcohol evaluation through Dauphin County Prison," and "was willing to attend any recommended treatment." Motion to Modify Sentence, 1/21/22, at 2. The court denied the motion. Burgos appealed.

Burgos challenges the court's exercise of discretion at sentencing, and frames his issue as follows.

> Whether the trial court abused its discretion in imposing a sentence upwardly departing from the sentencing guidelines, when the overall sentence is four to ten years of incarceration, with five years of probation consecutive to the prison term. This upward departure from even the aggravated sentence, factoring in the merged offenses, remains manifestly excessive as to constitute an abuse of discretion. The individual sentences were outside the sentencing guidelines, both for terms of total incarceration and the years-long probationary sentences. Further, the trial court focused almost exclusively on the severity of the

offense and relied upon hearsay which was not admitted to in the guilty plea colloquy. A court may abuse its discretion in imposing such sentence if "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). The individual sentences were excessive and unreasonable and constitute too severe a punishment considering the rehabilitative needs of [Burgos].

Burgos's Br. at 7-8.

An appellant has no absolute right to challenge the discretionary aspects of his sentence. *Commonwealth v. King*, 182 A.3d 449, 453 (Pa.Super. 2018). An appellant seeking our review of discretionary sentencing claims must (1) timely appeal, (2) preserve the issue in the trial court, (3) include in the appellate brief a Pa.R.A.P. 2119(f) concise statement of the reasons to allow the appeal, and (4) present within the Rule 2119(f) statement a substantial question that the sentence is not appropriate under the Sentencing Code. *Id.*

Burgos filed a timely notice of appeal, filed a post-sentence motion arguing that the court should reduce the sentence based on certain mitigating factors, and filed a Rule 2119(f) statement. In the statement, Burgos argues the court failed to consider the 42 Pa.C.S.A. § 9721(b) factors and that his sentence of incarceration, which was an upward departure from the guidelines, combined with a lengthy term of probation, is manifestly excessive under the facts of his case. Burgos's Br. at 17-18. Burgos further argues the court focused solely on the nature of the criminal conduct and considered facts not within the record. *Id.* at 19.

To the extent that Burgos argues the court considered impermissible factors, he did not raise these allegations to the trial court in the first instance, and we find the issues waived, as we will discuss in more detail below. However, we have previously found that a claim of excessiveness in conjunction with a claim that the court did not consider the relevant sentencing criteria poses a substantial question. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1272-74 (Pa.Super. 2013). We will therefore begin with a review of the issue Burgos preserved in his post-sentence motion.

We will not disturb a sentence absent an abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (citation omitted).

Further, where the court has imposed a sentence falling outside the sentencing guidelines, we will only vacate the sentence where it is "unreasonable." 42 Pa.C.S.A. § 9781(c)(3). In making this determination, we will consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission

- 14 -

*Id.* at § 9781(d). Our scope of review is plenary, and we may review the entire record. *Walls*, 926 A.2d at 961 n.2.

The Sentencing Code requires the trial court to "follow the general principle that the sentence imposed should call for confinement that is consistent with section 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). However, the court need not "parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b)." *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa.Super. 2008). Rather, "the record as a whole must reflect due consideration by the court of the statutory considerations." *Id.* Where the court has the benefit of a PSI report, we may presume the court was aware of all appropriate sentencing factors and considerations and consider the requirement that the court place its reasoning on the record to be satisfied. *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 26 (Pa.Super. 2017) (citing, *inter alia*, *Commonwealth v. Devers*, 546 A.2d 12, 18-19 (Pa. 1988)).

We find no merit in Burgos's claims that the court imposed an unreasonable sentence, or that the record reflects the court failed to consider Burgos "had a minimal prior record, secured potential future employment, . . . completed a drug and alcohol evaluation through Dauphin County Prison," and "was willing to attend any recommended treatment." Motion to Modify

- 15 -

Sentence, 1/21/22, at 2. The court had the benefit of the PSI, and we presume the court was aware of and properly weighed all relevant sentencing criteria. *Johnson-Daniels*, 167 A.3d at 26. Moreover, the record contradicts Burgos's claims that his criminal history was insignificant, as Burgos had two prior DUI convictions. Considering the entire record, including Burgos's DUI history, his actions in this case, the impact on the victim, and Burgos's failure to accept responsibility—as found by the trial court—we do not find the sentence to be unreasonable.

The bulk of the argument Burgos presents in his brief bears little relation to the above issue, and to the extent that the two diverge, we find his arguments waived. *King*, 182 A.3d at 453; *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003) ("issues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings"); Pa.R.A.P. 302(a). We will nonetheless review them for the sake of completeness.

Burgos argues the court's statements at sentencing show that it overly emphasized the severity of his conduct, including his conduct during his arrest and the impact of the offense on the victim. Burgos's Br. at 23, 25. Burgos argues that the court should not have departed from the guidelines based on the seriousness of the offense or the harm to the victim, because "the seriousness of aggravated assault by DUI [is] inherent in the guidelines," and "takes into consideration that aggravated assault by vehicle while DUI [may] cause serious bodily injury." *Id.* at 27-28. He makes the same argument

regarding the court's sentences for Terroristic Threats and Obstruction of Justice. *Id.* at 30-31.

Burgos never argued below that by considering the severity of his conduct and the harm he caused, the court was double-counting factors used in calculating the guidelines ranges. Therefore, the issue is waived. Even if it were not waived, a court may use information related to the offense gravity score and prior arrest record "to supplement other extraneous sentencing information." *Commonwealth v. Simpson*, 829 A.2d 334, 339 (Pa.Super. 2003). For example, the court may consider whether the case "is compellingly different from the 'typical' case of the same offense," or if the information reflects upon the defendant's character. *Commonwealth v. Robertson*, 874 A.2d 1200, 1213 (Pa.Super. 2005). Furthermore, a court does not abuse its discretion so long as it has other reasons to deviate from the guidelines. *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006); *see, e.g.*, *Commonwealth v. Sheller*, 961 A.2d 187, 192 (Pa.Super. 2008) (finding even if court had considered factors going to the gravity of the offense when upwardly departing from the guidelines, the court recited proper factors it took into consideration, such as impact of the crime on the relatives of the victim). Here, the court found the facts of the case to be an egregious departure from even an aggravated case of aggravated assault while DUI, and its consideration of these facts when deciding to deviate from the guidelines was not an abuse of discretion.

Burgos also argues the court abused its discretion in considering statements in the affidavit of probable cause for his arrest, which included "uncharged conduct: fleeing from the scene and alleged statements received during the preliminary hearing." Burgos's Br. at 24. He claims, "This focus on hearsay and uncharged conduct is improper and not what Mr. Burgos pled to." *Id.*

We find these issues waived as well. Burgos did not object when the Commonwealth argued at sentencing that he had fled the scene. Information regarding flight was also contained in the affidavit of probable cause within the PSI, and Burgos did not object to its admission into evidence. Furthermore, the facts to which he pleaded guilty included the assertion that he "eventually stopped for police officers," and Burgos agreed to this statement.

Regarding the contention that the court improperly considered hearsay—that is, the statement Burgos made at the preliminary hearing that the victim stepped in front of his car—we find this waived by Burgos's failure to object when the Commonwealth included this in its argument at the sentencing hearing. Furthermore, an admission by an opposing party is an exception to the rule against hearsay. *See* Pa.R.A.P. 803(25).

Next, Burgos argued the court erred in deviating from the guidelines based on speculation that he needs treatment for substance addiction. Burgos's Br. at 23, 25. He claims the court increased his sentence based on two previous DUI convictions, including one which was over ten years old, and

that the court considered these convictions as evidence that he was an alcoholic. He also argues the court held against him that he does not consider himself an alcoholic. *Id.* at 14. Burgos contends the court's presumption that he requires addiction treatment "creates a *per se* rule that multiple DUI offenders are alcoholics and need substantial state incarceration for treatment." *Id.* at 26. He claims this is against the legislative scheme for sentencing DUIs, which he asserts is based on the amount of alcohol in one's system, resulting property damage, and the number of prior offenses. *Id.* at 26-27 (citing 75 Pa.C.S.A. § 3804). Burgos further argues that the court ignored the PSI report, "which found [Burgos] had low substance abuse problems and criminal history." *Id.* at 25. He claims the court's "scant remarks during sentencing . . . lack any sort of detailed reconciliation between the sentence and the information in the [PSI]." *Id.*

Burgos never argued that the court abused its discretion and increased his sentence based on speculation that he needs treatment for substance addiction. Nor did Burgos raise to the court that its statements contradict the contents of the PSI, which Burgos claims support a finding that he does not have an extensive criminal record or any issues with alcohol or drug abuse. These issues are waived.

Regardless, we find no merit to them. The court properly considered Burgos's two prior DUI's, as these indicate he is not amenable to rehabilitation. *See Commonwealth v. Goggins*, 748 A.2d 721, 732 (Pa.Super. 2000) (a record of prior police involvement goes to a defendant's

amenability to rehabilitation, a factor the court must consider under 42 Pa.C.S.A. § 9721(b)). We fail to see how the PSI, which references these convictions, substantiates Burgos's claim that he lacks a criminal record. We also note that while Burgos argued at the sentencing hearing that the criminal record in his PSI was incorrect, he does not make this claim on appeal.

Further, although the court's sentence reflects that one of its aims was to secure therapeutic treatment for Burgos, despite Burgos assertion in the PSI and at the hearing that he does not have a substance abuse problem, the court did not abuse its discretion in considering that he might benefit from treatment. Burgos does not deny that he has two prior DUI convictions. The PSI reported that he stated that he has never done drugs, yet when he was reminded at sentencing that drugs were in his system at the time of the current offenses, he contradictorily said they were still in his bloodstream from "three days ago." Burgos also stated that he sustained DUI convictions based on .08% alcohol in his bloodstream after two glasses of wine on one occasion, and that he had .114% blood alcohol content after one shot and a beer in the instant case. The court did not abuse its discretion in concluding that Burgos may have substance abuse issues and ordering an evaluation. Moreover, the court did not increase Burgos's sentence for this reason alone, but due to the "disturbing" and "abhorrent" facts of the case, Burgos's prior DUI offenses, his lack of remorse, the victim's right to retribution, and the need for deterrence.

Regarding his sentences for terroristic threats and obstruction of justice, Burgos contends the court provided no rationale for its imposition of a five-

year consecutive term of probation or concurrent two-year term of probation, when the standard ranges were restorative sanctions to six months' incarceration. *Id.* at 29. Burgos claims that if the court had sentenced him within the guidelines for both the terroristic threats and obstruction charges, even consecutively, "the sentence would be vastly shorter than the sentence the trial court gave: one year [of incarceration] versus five [years of concurrent probation]." *Id.* at 31.

Burgos never argued in the trial court that it had exceeded the guidelines ranges on these charges. In fact, in the post-sentence motion, Burgos erroneously stated that the aggregate sentence fell within the aggravated range. Moreover, the aggravated ranges for these two convictions went up to nine months' incarceration, not six.

Finally, Burgos argues the court's justification for imposing probation so it could "monitor" him is "duplicative of the supervision the court's sentence [of incarceration] provides," assuming he is paroled after his four-year minimum and serves the remainder of that sentence on parole. Burgos's Br. at 29-30. He cites 42 Pa.C.S.A. § 9912(a) (purposes of parole) and 61 Pa.C.S.A. § 6182 (purposes of probation), both which state the purpose of supervised release is to assist offenders with rehabilitation and reassimilation into the community and to protect the public.

Burgos failed to argue below that the court abused its discretion in imposing probation consecutively to his incarceration when he would already have served a lengthy parole prior to the start of his probation. We additionally

find this argument speculative, as Burgos may serve his entire sentence of incarceration prior to his term of probation. Nor do we find the imposition of a lengthy period of supervision in this case to constitute an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2022